UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

In re:
MOSHE ENBAR,                            Case No. 16-21262-AJC
        Debtor.                        /             Chapter 7
FRED GOODSTEIN and
    MICHELE GOODSTEIN
        Plaintiffs,
v.                                                        Adv. No.: 17-01018-AJC
MOSHE ENBAR,
        Debtor/Defendant   /

**MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW**

Moshe Enbar, Debtor and Defendant, moves pursuant to Fed.R.Civ.P. 56(a), made applicable herein by Bankruptcy Rule 7056, and in compliance with Local Rule 7056-1, for summary judgment dismissing, with prejudice, the only remaining Counts of the Complaint, Counts V and VI, with prejudice, and says:

**COUNT V**

1.     In Count V, Plaintiffs seek exception from discharge for defalcation while in a fiduciary capacity[1].

*No Fiduciary Relationship Existed*

---

[1] The Court has already determined that the Plaintiffs have not adequately plead fraud, relying instead upon the novel theory of fraud-by-proxy, leaving only fiduciary defalcation as the sole ground for exception from discharge pursuant to 11 U.S.C. § 523(a)(4). [ECF 75, pages 4-5]. As a result, the allegations of paragraphs 17, 18, 44, 46, 49, 58, 59, 118, 124, 125, 127, 130, 134, 135, and 137 wherein fraud is generally alleged are not addressed in this motion, having already been resolved by prior Order of the Court. [ECF 75]. The Plaintiffs elected not to file an amended complaint, notwithstanding the Court's order giving them that option. [ECF 75].

2. Plaintiffs rely entirely upon the relationship between members of a New York limited liability company to establish the fiduciary relationship, an essential element for exception from discharge for defalcation pursuant 11 U.S.C. §523(a)(4). [ECF 1, paragraphs 121-123, 126, 127].

3. Plaintiffs cite, as the sole basis for the alleged fiduciary relationship, New York LLC Law § 409, which provides,

> (a) A manager shall perform his or her duties as a manager, including his or her duties as a member of any class of managers, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.
> (b) In performing his or her duties, a manager shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:
> (1) one or more agents or employees of the limited liability company;
> (2) counsel, public accountants or other persons as to matters that the manager believes to be within such person's professional or expert competence; or
> (3) a class of managers of which he or she is not a member, duly designated in accordance with the operating agreement of the limited liability company, as to matters within its designated authority, which class the manager believes to merit confidence, so long as in so relying he or she shall be acting in good faith and with such degree of care, but he or she shall not be considered to be acting in good faith if he or she has knowledge concerning the matter in question that would cause such reliance to be unwarranted.
> (c) A person who so performs his or her duties in accordance with this section shall have no liability by reason of being or having been a manager of the limited liability company.

4. The foregoing New York law does not create a fiduciary relationship between Mr. Enbar and the Plaintiffs.

5. Mr. Enbar has certified that he had no relationship with the Plaintiffs other than that of a managing member of the LLC[2] in which the Plaintiffs held a 5% non-managerial membership interest, and to which LLC the Plaintiffs were lenders. As to their 5% interest, the Goodsteins agreed to give that interest back to the LLC once the Loan was repaid. See the Operating Agreement, page 3, paragraph 7.04.

6. The phrase, "while acting in a fiduciary capacity" has a specific meaning in the Bankruptcy Code. The fiduciary capacity described in 11 U.S.C. §523(a)(4) arises solely in an express trust, and not by operation of law. *In re Daprizio*, 365 B.R. 268, 282 -283 (Bankr. S.D.Fla. 2007). See also *In re Fernandez Rocha*, 451 F.3d 813 (11th Cir. 2006).

7. Mr. Enbar, in his Certification in Support of Motion for Summary Judgment ("Enbar's Certification") establishes that the sole relationship he had with the Plaintiffs was as a managing member of the LLC.

8. No relationship implicating an express trust ever existed as between the Plaintiffs and Mr. Enbar.

9. For some reason, which is not apparent, Plaintiffs also cite New York LLC Law §

---

[2] All capitalized terms herein are defined in Mr. Enbar's Certification of even date.

3

417 to attempt to establish personal liability of Mr. Enbar (without any defalcation or the establishment of a fiduciary relationship), which provides as follows.

> (a) Subject to the provisions of this chapter, the members of a limited liability company shall adopt a written operating agreement that contains any provisions not inconsistent with law or its articles of organization relating to (i) the business of the limited liability company, (ii) the conduct of its affairs and (iii) the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents, as the case may be.
>
> The operating agreement may set forth a provision eliminating or limiting the personal liability of managers to the limited liability company or its members for damages for any breach of duty in such capacity, provided that no such provision shall eliminate or limit:
> (1) the liability of any manager if a judgment or other final adjudication adverse to him or her establishes that his or her acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he or she personally gained in fact a financial profit or other advantage to which he or she was not legally entitled or that with respect to a distribution the subject of subdivision (a) of section five hundred eight of this chapter his or her acts were not performed in accordance with section four hundred nine of this article; or
> (2) the liability of any manager for any act or omission prior to the adoption of a provision authorized by this subdivision.
>
> (b) The operating agreement of a limited liability company may be amended from time to time as provided therein; provided, however, that, except as otherwise provided in the operating agreement or the articles of organization, without the written consent of each member adversely affected thereby, (i) no amendment of the operating agreement or (ii) to the extent any provision concerning (A) the obligations of any member to make contributions, (B) the allocation for tax purposes of any

> items of income, gain, loss, deduction or credit, (C) the manner of computing the distributions of any member or (D) the compromise of an obligation of a member to make a contribution is contained in the articles of organization, no amendment of such provision in the articles of organization, shall be made that (i) increases the obligations of any member to make contributions, (ii) alters the allocation for tax purposes of any items of income, gain, loss, deduction or credit, (iii) alters the manner of computing the distributions of any member or (iv) allows the obligation of a member to make a contribution to be compromised by consent of less than all the members.
>
> (c) An operating agreement may be entered into before, at the time of or within ninety days after the filing of the articles of organization. Regardless of whether such agreement was entered into before, at the time of or after such filing, such agreement, may be effective upon the formation of the limited liability company or at such later time or date as provided in the operating agreement; provided, however, under no circumstances shall an operating agreement become effective prior to the formation of such company.

10. The Plaintiffs have, as is their practice, included the foregoing citation as another "shotgun" blast, with no relevance to the exception from discharge under 11 U.S.C. § 523(a)(4).

### *No Defalcation Occurred*

11. "'Defalcation' refers to a failure to produce funds entrusted to a fiduciary." *Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir. 1993).

12. Mr. Enbar was neither a fiduciary, nor someone who was entrusted with the Plaintiffs' funds.

13. The funds transferred from the LLC by Mr. Enbar were funds of the LLC, not funds of the Goodsteins.

14. All funds of the LLC, transferred by Mr. Enbar, are accounted for in two charts, attached to Mr. Enbar's Certification as Exhibits A and B.

15. Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See id., § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'wilful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." Id., § 2.02(2)(c), at 226 (emphasis added). *Cf. Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").

*Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273–74 (2013).

Wherefore, Mr. Enbar requests entry of an order dismissing Count V, with prejudice.

## COUNT VI

16. In Count VI, Plaintiffs seek exception from discharge for embezzlement.

### ***GOODSTEINS LACK STANDING***

17. Nowhere in the Complaint do the Plaintiffs allege that Mr. Enbar appropriated their property.

18. The Plaintiffs have no standing to assert embezzlement.

19. In paragraphs 22, 119, 131 of the Complaint, Plaintiffs admit they loaned money to the LLC, not to Mr. Enbar.

20. In his Certification, Mr. Enbar confirms that the funds he transferred from the account of the LLC were funds of the LLC, and not funds belonging to the Plaintiffs.

21. In paragraph 40 of the Complaint, Plaintiffs admit that the funds which are the subject of Count VI of the Complaint belonged to the LLC, and therefor such funds were not owned by the Plaintiffs. [ECF # 1, p. 8/32].

22. Plaintiffs do not allege, and they cannot so allege, that Mr. Enbar embezzled their money.

23. As one court has observed,

> The Plaintiff argues that his injury, namely his potential liability for St. Josephs' Support Claim, was caused by the Defendants' tortious conduct consisting of their scheme to embezzle the Mother's assets. The Amended Complaint does

> not contain, and the Plaintiff has not otherwise offered, any other premise for the Plaintiff's alleged right to reimbursement from the Defendants.
>
> The Defendants argue that the Plaintiff does not have standing to sue the Defendants based upon tortious conduct directed at a third party. The Plaintiff does not dispute that the Amended Complaint only references conduct directed at the Mother's property.
>
> \*\*\*
>
> Problematically, the Amended Complaint does not allege any tortious conduct that was directed at the Plaintiff. By the Plaintiff's admission, the alleged tortious conduct was directed at the Mother. The Plaintiff alleges that the Defendants embezzled the property of the Mother.
>
> \*\*\*
>
> While the allegations of the Amended Complaint do suggest that the Mother was injured by the Defendants' tortious conduct, that conduct was directed at the Mother and her property. The conduct was not directed at the Plaintiff. The Plaintiff may not invoke a cause of action that belongs to his Mother to remedy the Plaintiff's liability for the Support Claim. *See, e.g., Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268–269, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) ("a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover.")...

*In re Skinner*, 519 B.R. 613, 619, 621 (Bankr. E.D. Pa. 2014), *aff'd*, 532 B.R. 599 (E.D. Pa. 2015), *aff'd*, 636 Fed. Appx. 868 (3d Cir. 2016).

24. If one assumes that Mr. Enbar did embezzle funds, those were funds of the LLC, and not funds of the Plaintiffs herein, who have no standing to assert a claim on behalf of the LLC.

25. Another Court has observed,

> [An] 'Essential element of a conversion is a wrongful deprivation of property to the owner.'.... 'The gist of a conversion has been declared to be not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled. A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.' 53 Am.Jur., p. 822. *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So.2d 858, 860 (Fla.1948).

*In re Mouttet*, 493 B.R. 640, 662 (Bankr. S.D. Fla. 2013).

26. The Plaintiffs having loaned their money to the LLC had no possessory interest in such funds.

27. > Embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."
>
> ***
>
> "embezzlement" is a concept in which the debtor is legally and consensually in possession of property owned by another which the debtor then diverts to purposes in contravention of another's ownership interest.
>
> Proof of embezzlement or larceny requires a showing of fraud or fraudulent intent.

*In re Gelinas*, 05-36668-BKC-PGH, 2007 WL 2965046, at *7 (Bankr. S.D. Fla. Oct. 9, 2007)(citations omitted).

28. "As commonly used, 'embezzlement' requires conversion..." *Bullock v. Bank*

*Champaign, N.A.*, 569 U.S. 267, 275 (2013).

> Embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or unto whose hands it has lawfully come." *In re Cuenant*, 339 B.R. 262, 277 (Bankr.M.D.Fla.2006). The plaintiff must show that the property was taken for the debtor's benefit "with fraudulent intent or deceit." *Id.*

*In re Mouttet*, supra at 666.

29. Plaintiffs have admitted that they "loaned money to 2457 8th LLC..." [ECF # 1, p. 21/32, para. 131].

30. Plaintiffs fail to allege that Mr. Enbar converted their property. If the Plaintiffs are lenders to the LLC, then the funds transferred by Mr. Enbar were property of the LLC, and not property of the Plaintiffs, who are not asserting embezzlement on behalf of the LLC.

31. "[T]he mere existence of a debtor/creditor relationship cannot be a basis for finding that embezzlement occurred; the money belongs to the debtor in such a relationship and use of the money does not amount to embezzlement." *In re Ramonat*, 82 B.R. 714, 720 (Bankr. E.D. Pa. 1988)(citations omitted). *Accord*, *Matter of Storms*, 28 B.R. 761, 765 (Bankr. E.D.N.C. 1983)("Where the parties' conduct indicates a debtor-creditor relation, funds that come into the hands of the debtor belong to him and his subsequent use of them is not embezzlement.")

> In the case of *In re Lloyd Phillips*, 882 F.2d 302 (8th Cir.1989),

> the Court of Appeals held that funds which were subject to the Bank's security interest did not give the Bank an ownership to the funds the debtors, thus could not be subject to embezzlement of funds of the Bank therefore a claim based on embezzlement could not support a claim of non-dischargeability based on § 523(a)(4).

*In re Nobel*, 179 B.R. 313, 315 (Bankr. M.D. Fla. 1995).

32. The only references to acts of fraud in the entire Complaint are those attributed to Steven Kamhi. [ECF # 1, p. 3/32, para. 14, 15]. This Court has already determined that the Plaintiffs did not allege that Mr. Enbar committed fraud. [ECF # 75].

33. Without fraud there cannot be embezzlement.

34. Even where the facts of a case show some relation of trust requiring a debtor to hold funds for another, the debtor's subsequent appropriation of the funds will not amount to embezzlement absent proof of the debtor's fraudulent intent. Fraudulent intent may be negated by the fact the debtor used such funds openly, without attempt to conceal, and had reasonable grounds to believe he had the right to so use. *Maine Bonding and Casualty Co. v. Crook (In re Crook)*, 13 B.R. 794, 4 C.B.C.2d 1451 (Bkrtcy.D.Maine 1981).

*Storms*, supra at 765.

35. Plaintiffs knew, or should have known, before they loaned money to the LLC that it did not own any real property, which fact was easily ascertained by reference to public records.

36. Plaintiffs were represented by independent counsel and presumably relied upon the advice of such independent counsel, who, upon information and belief: formed the LLC; drafted the Loan documents; drafted the Operating Agreement; and all

11

transactional documents related to the foregoing.

37. When he transferred funds from the account of the LLC, Mr. Enbar believed that such transfer was unanimously authorized by the managing members.

38. Mr. Enbar has certified that he listened to a conversation between the other managing member of the LLC, Steven Kahmi, and the Plaintiffs, on speaker phone, during which conversation Mr. Kahmi clearly informed the Plaintiffs that the funds loaned to the LLC would be used on other projects.

39. Mr. Enbar continued to negotiate with the Attorney General of New York, after transferring funds from the LLC to acquire the intended property.

40. Plaintiffs rely upon the allegations of a Complaint filed in New York, and the judgment which flowed therefrom.  The absence of specific allegations of, or findings of fraud within the requirements of 11 U.S.C. §523(a)(4), precludes exception from discharge based upon the New York judgment.

> Further, there are no specific findings relating to any of the counts subject of the Guardianship Lawsuit that would demonstrate the issue of fraud or dischargeability was actually litigated and ruled upon by the State Court. Therefore, the Court cannot find that the issues were actually litigated as it is not clear which facts and which causes of action were considered by the State Court when it entered the Order Approving Settlement.

*In re Brooks*, 11-38159-BKC-AJC, 2012 WL 3781134, at *5 (Bankr. S.D. Fla. Aug. 31, 2012), *citing, In re Labidou*, 08-29828-EPK, 2009 WL

2913483, at *6 (Bankr. S.D. Fla. Sept. 8, 2009).

41. In a recent case, the standards for application of a pre-petition State Court judgment were detailed.

> When a Florida state court judgment is at issue, this Court must apply the collateral estoppel law of Florida. *In re St. Laurent*, 991 F.2d at 676. Under Florida law, for a judgment to have preclusive effect, four elements must be satisfied: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the present case. *Id.*

*In re Kane*, 470 B.R. 902, 926 (Bankr. S.D. Fla. 2012), *aff'd sub nom. Kane v. Stewart Tilghman Fox & Bianchi, P.A.*, 485 B.R. 460 (S.D. Fla. 2013), *aff'd sub nom. In re Kane*, 755 F.3d 1285 (11th Cir. 2014).

42. This Court has already noted the ineffectiveness of the prior judgment. See ECF # 12, p. 1/24; ECF 58, p. 2/21, 11/21 (including Note 4), 13/21, 16/21, ECF 75.

43. The prior judgment having failed to establish any facts, the Goodsteins are now prohibited by the applicable statute of limitations from converting their obligations from the LLC into a personal liability of Mr. Enbar. The subject transactions occurred in 2008. The statute of limitations for recovery for fraudulent conversion is explained in Exhibit C to Mr. Enbar's Certification. Therein, the Honorable

Judge Glasso explained that the statute of limitations for fraud is 6 years, and there is no suspension of the statute during a time when the plaintiff did not know of the alleged fraud.

Wherefore, Mr. Enbar requests entry of an order dismissing Count VI, with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing, along with the Certification of Maurice Enbar and the attached Local Form "Notice Regarding Opposing Motions for Summary Judgment", LF-101 were served on March 15, 2019, via email to: Amanda Peterson, Esq., Weg & Myers, P.C., 52 Duane Street 2nd Floor, New York, NY 10007, Email: apeterson@wegandmyers.com, and Jeff Berlowitz, Esq., jberlowitz@srhl-law.com.

Respectfully submitted,
**FLORIDA BANKRUPTCY GROUP, LLC.**
Attorneys for Moshe Enbar
4121 N 31st Avenue
Hollywood, Fl 33021-2011
954-893-7670/954-893-7675 Fax
By: s/ *Kevin C Gleason*
Fla Bar No. 369500
BankruptcyLawyer@aol.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

In re:
MOSHE ENBAR,                                                             Case No. 16-21262-AJC
        Debtor.               /                         Chapter 7
FRED GOODSTEIN and
    MICHELE GOODSTEIN
        Plaintiffs,

v.                                                                                         Adv. No.: 17-01018-AJC

MOSHE ENBAR,
        Debtor/Defendant    /

**NOTICE REGARDING OPPOSING MOTIONS FOR SUMMARY JUDGMENT**

    Moshe Enbar (the "Movant") has moved for summary judgment pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, which adopts by reference Rule 56 of the Federal Rules of Civil Procedure. This means that the Movant has asked the Court to decide this matter in the Movant's favor without a trial, based on written materials, which may include affidavits and other evidence, submitted in support of the motion. The claims asserted by the Movant may be decided without a trial if the Court determines that there is no genuine dispute as to any material fact and the Movant is entitled to judgment as a matter of law.

    You have a right to respond to the motion under Rule 56(c). Your response may include affidavits, declarations or other evidence in opposition to the motion. You may NOT oppose summary judgment simply by relying on the statements you made in your answer or original response. If you do not respond with affidavits or other evidence contradicting the facts asserted by the Movant, the Court may accept these factual assertions as true. Therefore, it is important that you provide support to show that there is an issue for trial based on a dispute of the material facts. On the last page of this notice, you will find a form of affidavit which you may wish to use in responding to the motion for summary judgment.

    Rule 56, which governs motions for summary judgment, provides as follows:

Rule 56.  Summary Judgment
    (a)    Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense     or the part of each claim or defense     on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
    (b)    Time to File a Motion.  Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.
    (c)    Procedures.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
(2) Objection That a Fact Is Not Supported by Admissible Evidence.
A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.
(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.
(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
(1) give an opportunity to properly support or address the fact;
(2) consider the fact undisputed for purposes of the motion;
(3) grant summary judgment if the motion and supporting materials    including the facts considered undisputed    show that the movant is entitled to it; or
(4) issue any other appropriate order.
(f)  Judgment Independent of the Motion.  After giving notice and a reasonable time to respond, the court may:
(1) grant summary judgment for a nonmovant;
(2) grant the motion on grounds not raised by a party; or
(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.
(g) Failing to Grant All the Requested Relief.  If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact    including an item of damages or other relief    that is not genuinely in dispute and treating the fact as established in the case.
(h) Affidavit or Declaration Submitted in Bad Faith.  If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court    after notice and a reasonable time to respond    may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result.  An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
[division name] DIVISION

In re:                                                                                                 CASE NO.:[number]
[debtor name(s)],                                                            CHAPTER [chapter number 7, 11 or 13]
     Debtor(s).
_____/
   [use this section only for adversary proceedings] [name(s) of plaintiff(s)],
                                                                                                           ADV. NO.: [number]

     Plaintiff(s),
v.

[name(s) of defendant(s)],

     Defendant(s).
_____/

**DECLARATION UNDER PENALTY OF PERJURY**

   I, [name of person making statements], being at least 18 years of age, hereby declare based on my personal knowledge:

   [numbered paragraphs stating facts in support of your position]

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on [date signed].

                                                     _____
                                                     [name of person signing declaration - you need to print or type the name clearly below the line and then have the person making the declaration sign his or her name above the line]

LF-101 (rev. 02/02/11)