

**ORDERED in the Southern District of Florida on May 15, 2020.**

*[signature]*

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | CASE NO: 16-21262-BKC-AJC |
| MOSHE ENBAR, | CHAPTER 7 |
| Debtor. _____/ | |
| FRED GOODSTEIN and MICHELE GOODSTEIN | ADV. NO: 17-1018-BKC-AJC-A |
| Plaintiffs, v. | |
| MOSHE ENBAR, | |
| Debtor/Defendant. _____/ | |

### ORDER GRANTING SUMMARY JUDGMENT ON COUNTS V AND VI OF COMPLAINT

THIS CAUSE came before the Court for hearing upon Debtor/Defendant Moshe Enbar's *Motion for Summary Judgment and Memorandum of Law* (ECF 144). The Court has reviewed the summary judgment motion and the supplement thereto (ECF 162). The Court has also considered

the depositions of Fred and Michelle Goodstein ("Plaintiffs") (ECFs 142, 152, and 153), as well as Debtor's certification (ECF 143). In opposition to the motion, Plaintiffs filed, and the Court considered, the response to the summary judgment motion (ECF 156) and the declarations of Attorneys Paseltiner (ECF 157), Cahmi (ECF 158) and Peterson (ECF 159), and each of the Plaintiffs (ECFs 160 and 161). The Court reviewed well over 600+ pages of documents in support of and in opposition to the summary judgment motion. The following are the undisputed facts established in the record and the Court's conclusions of law.

## UNDISPUTED FACTS

On January 13, 2017, Plaintiffs filed a Complaint objecting to the dischargeability of debt. The Complaint consisted of twelve counts in 182 paragraphs and over 300 pages of documents. The Court initially dismissed five counts of the Complaint. Thereafter, the Court dismissed another five counts, with leave to amend. No amended complaint was filed. Plaintiffs having abandoned those claims, only two counts remain, both brought pursuant to 11 U.S.C. §523(a)(4): Count V-Defalcation While Acting in a Fiduciary Capacity and Count VI-Embezzlement, based on the following facts.

In December 2008, based upon representations made solely by non-party Steven Kamhi ("Kamhi"), the Plaintiffs loaned $150,000 to 2457 8th LLC ("LLC") in exchange for 5% interest in the LLC.[1] The promissory note memorializing the loan was executed on December 10, 2008 and was signed for the LLC by Maurice Enbar (Debtor Moshe Enbar, or "Defendant") and Kamhi, who were each identified as managing members of the LLC.[2] In addition to the promissory note, Kamhi

---

[1] Plaintiffs' testimony reveals they never spoke to the Defendant prior to the closing of the loan.

[2] Plaintiffs' testimony reveals they never spoke to the Defendant prior to the default on the promissory note.

personally guaranteed the loan to the Plaintiffs in a separate guaranty executed on December 10, 2008. Debtor did not execute any guaranties to Plaintiffs.

The promissory note structured repayment of the Plaintiffs's loan in eighteen payments of seventeen interest only monthly installments of $1,500 and a balloon payment of $166,500 (representing the amount of principal and interest remaining on the Plaintiffs' loan). The promissory note also provided that, in the case of default, interest would accrue at the lower of 24% per annum or the highest rate allowable by law.

The record indicates that on December 12, 2008, Defendant opened an account in the name of the LLC and deposited the $150,000. On December 12, 2008, the LLC transferred the sum of $145,000 to Flatiron Equities, LLC. On December 22, 2008, Flatiron Equities, LLC transferred the sum of $135,000 to 23-123rd Street, LLC, which transferred the same sum into the personal account of the Defendant and his non-debtor spouse. Some time between December 23-24, 2008, $135,000 was transferred out of the Debtor's joint personal account into the account of Magnum Real Estate Services, Inc., a company owned and operated by Defendant.

The LLC made the first fifteen payments, then defaulted by failing to make the last two interest-only payments and the balloon payment.

The Plaintiffs thereafter brought two actions in New York to recover on their loan, one against Kamhi and the LLC, and the other against the Debtor, Flatiron Equities, LLC and Magnum Real Estate Services, Inc. In both actions, the Plaintiffs obtained default judgments against all the defendants for the amount outstanding under the promissory note, as well as interest. In the Debtor's case, the state court found that Debtor and his co-defendants owed the Plaintiffs $212,637.75. By this action, the Plaintiffs are seeking a determination that the debt owed to them by this Debtor pursuant to that default judgment is non-dischargeable pursuant to 11 U.S.C. §523(a)(4).

Based upon the voluminous record, summary judgment is granted in favor of the Defendant based on these undisputed facts, for the reasons set forth herein.

## CONCLUSIONS OF LAW

Rule 56(a) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides: "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial." *Pierre v. Welfare (In re Pierre),* 198 B.R. 389, 391 (S.D. Fla. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-249 (1986); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"Thus, a party, who is faced with a properly supported summary judgment motion, is obligated to come forward with extrinsic evidence which is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial' in order to avoid the entry of a summary judgment." *Hillburn v. Murata Elecs. N. Am.*, Inc., 181 F.3d 1220, 1225 (11th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322). "There is no genuine issue

for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the non-moving party." *Pierre*, 198 B.R. at 391.

## I.     *No Fiduciary Duty Sufficient to Prove a Claim for Defalcation*

Under Count V, Plaintiffs allege that their claim for non-dischargeability arises from Defendant's breach of his statutory duties as a manager of the LLC. Specifically, Plaintiffs argue that New York law creates fiduciary duties which Defendant breached when he defalcated while acting in a fiduciary capacity as the co-manager of the LLC. The Defendant counters that, even if he breached his statutory duties under New York law, the statutorily created "fiduciary" duties required of a manager of a New York limited liability company under New York state law do not rise to the requisite level of fiduciary capacity needed to make a debt non-dischargeability under 11 U.S.C. §523(a)(4).

"Under 11 U.S.C. § 523(a)(4), a judgment is excepted from discharge if the debt was for fraud or defalcation while acting in a fiduciary capacity[.]" *Davis v. Ducharme* (*In re Ducharme*), 85 B.R. 640, 642 (S.D. Fla. 1988) (internal quotes omitted); 11 U.S.C. § 523(a)(4) (2018). The exceptions to discharge outlined in section 523 of the Bankruptcy Code must be construed narrowly against a creditor. *Bar-Am v. Grosman* (*In re Grosman*), 2007 WL 1526701, *14 (Bankr. M.D. Fla. May 22, 2007). "To establish fraud while acting in a fiduciary capacity, one must show (1) that the debt results from a fiduciary's defalcation under an express or technical trust; (2) that the debtor acted in a fiduciary capacity with respect to the trust; and (3) that the transaction in question is a defalcation [or fraud] within the meaning of Bankruptcy law." *In re Migell,* 2018 WL 1174890, at *5 (Bankr. M.D.Fla. Mar. 2, 2018) (citations omitted).

The threshold issue in Count V is whether Defendant owed a fiduciary duty to the Plaintiffs by virtue of his position as a co-manager of the LLC. While state law is relevant to the inquiry, the

determination of whether a debtor is a fiduciary for purposes of section 523(a)(4) is a matter of federal law. *In re Arthur*, 589 B.R. 761, 765 (Bankr. S.D.Fla. 2018) (citing *In re Talmo*, 175 B.R. 775 (Bankr. S.D.Fla. 1994)). Language similar to, but not identical to, section 523(a)(4) has existed in the bankruptcy statutes since 1841. *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993). Since that time, "the Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical trusts.'" *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993) (citing *Chapman v. Forsyth*, 43 U.S. 202 (1844); *Upshur v. Briscoe*, 138 U.S. 365 (1891); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934)); *Cates v. White (In re White)*, 2005 WL 5154692, *7 (Bankr. S.D. Fla. Nov. 21, 2005); *Caccamo v. Pouliot (In re Pouliot)*, 196 B.R. 641, 650-51 (S.D. Fla. 1996); *see also, Bordeaux v. Duhaime (In re Duhaime)*, 2012 WL 4466323, *3 (Bankr. S.D. Fla. Sept. 25, 2012); *Motta v. Bernard (In re Bernard)*, 152 B.R. 1016, 1020 (S.D. Fla. 1993); *In re Donald Hanft, M.D., P.A.*, 315 B.R. 617, 623 (S.D. Fla. 2002). "A bankruptcy court will not find that a fiduciary relationship exists under 11 U.S.C. § 523 unless there is proof of an express or technical trust." *Ducharme* at 642; *see also White* at *7, *Pouliot* at 651, *Duhaime* at *3.

"An express or technical trust exists when there is: (1) a segregated trust res; (2) an identifiable beneficiary; and (3) affirmative trust duties established by contract or by statute." *Grosman*, *16. The determination of whether an express or technical trust exists will turn on New York law. State law is relevant to the extent that it prescribes the elements of a trust or regulates fiduciary obligations, or creates a fiduciary relationship under common law or by statute. *See*, *In re Gucciardo,* 577 B.R. 23, 33 (Bankr. E.D.N.Y. 2014) (citing *Zohlman v. Zoldan*, 226 B.R. 767, 773 (S.D.N.Y 1998). "The technical or express trust requirement is not limited to formal contractual trust agreements, but can include relationships in which trust type obligations are imposed pursuant to statute, or potentially by common law." *Id.; see also, In re Guerrero*, 2010 WL 2926534, at *2

(Bankr. S.D. Fla. 2010).

Here, the undisputed facts reveal no express or technical trust existed. Defendant was not a fiduciary under the circumstances of the loan transaction. New York law governing limited liability companies, upon which Plaintiffs rely, states:

> (a) A manager shall perform his or her duties as a manager, including his or her duties as a member of any class of managers, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.
> (b) In performing his or her duties, a manager shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by:
> (1) one or more agents or employees of the limited liability company;
> (2) counsel, public accountants or other persons as to matters that the manager believes to be within such person's professional or expert competence; or
> (3) a class of managers of which he or she is not a member, duly designated in accordance with the operating agreement of the limited liability company, as to matters within its designated authority, which class the manager believes to merit confidence, so long as in so relying he or she shall be acting in good faith and with such degree of care, but he or she shall not be considered to be acting in good faith if he or she has knowledge concerning the matter in question that would cause such reliance to be unwarranted.
> (c) A person who so performs his or her duties in accordance with this section shall have no liability by reason of being or having been a manager of the limited liability company.

N.Y. Ltd. Liab. Co. L. §409. Plaintiffs also cite N.Y. Ltd. Liab. Co. L. §417 to support their position:

> (a) Subject to the provisions of this chapter, the members of a limited liability company shall adopt a written operating agreement that contains any provisions not inconsistent with law or its articles of organization relating to (i) the business of the limited liability company, (ii) the conduct of its affairs and (iii) the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents, as the case may be.
>
> The operating agreement may set forth a provision eliminating or

limiting the personal liability of managers to the limited liability company or its members for damages for any breach of duty in such capacity, provided that no such provision shall eliminate or limit:

(1) the liability of any manager if a judgment or other final adjudication adverse to him or her establishes that his or her acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law or that he or she personally gained in fact a financial profit or other advantage to which he or she was not legally entitled or that with respect to a distribution the subject of subdivision (a) of section five hundred eight of this chapter his or her acts were not performed in accordance with section four hundred nine of this article; or
(2) the liability of any manager for any act or omission prior to the adoption of a provision authorized by this subdivision.

(b) The operating agreement of a limited liability company may be amended from time to time as provided therein; provided, however, that, except as otherwise provided in the operating agreement or the articles of organization, without the written consent of each member adversely affected thereby, (i) no amendment of the operating agreement or (ii) to the extent any provision concerning (A) the obligations of any member to make contributions, (B) the allocation for tax purposes of any items of income, gain, loss, deduction or credit, (C) the manner of computing the distributions of any member or (D) the compromise of an obligation of a member to make a contribution is contained in the articles of organization, no amendment of such provision in the articles of organization, shall be made that (i) increases the obligations of any member to make contributions, (ii) alters the allocation for tax purposes of any items of income, gain, loss, deduction or credit, (iii) alters the manner of computing the distributions of any member or (iv) allows the obligation of a member to make a contribution to be compromised by consent of less than all the members.

(c) An operating agreement may be entered into before, at the time of or within ninety days after the filing of the articles of organization. Regardless of whether such agreement was entered into before, at the time of or after such filing, such agreement, may be effective upon the formation of the limited liability company or at such later time or date as provided in the operating agreement; provided, however, under no circumstances shall an operating agreement become effective prior to the formation of such company.

These good-faith and fair-dealing statutory duties imposed upon managers of limited liability companies under New York state statutes may be defined as fiduciary duties, but they do not rise to the level of "fiduciary capacity" as that term is used in 11 U.S.C. §523(a)(4). Under New York law, "fiduciary capacity" in section 523 (a)(4) does not include within its scope the fiduciary relationship between members of a limited liability company. The foregoing New York statutes do not create the requisite fiduciary relationship because the statutes do not create any trust res, identify any beneficiaries, or establish any fiduciary duty relative to the handling and maintenance of any trust res or other assets. No express or technical trust was created at the time Plaintiffs loaned the money to the LLC.

Furthermore, there was no segregated or defined trust res nor any trust beneficiary identified pursuant to any organizational documents. Plaintiffs assert an express trust was created by paragraph 3.02 of the Operating Agreement entitled "Capital Accounts" which Defendant breached when he failed to establish such capital account. The Court disagrees. A review of the Operating Agreement indicates the Capital Accounts provision does not create a trust res, name a beneficiary, or otherwise establish any fiduciary capacity as contemplated under section 523(a)(4). This provision appears to be nothing more than an accounting mechanism or book entry for the calculation of a members' proportionate interest in the LLC.

For the debt to be non-dischargeable under section 523 (a)(4), the Debtor must have violated a fiduciary duty under an express or technical trust, created under state law or by agreement of the parties. In this case, Plaintiffs made a loan to the LLC, and Defendant's transfer of funds from the LLC was not a breach of the fiduciary capacity as required by section 523 (a)(4). As such, Plaintiffs have failed to establish an essential element required by 11 U.S.C. §523(a)(4) to determine a debt non-dischargeable, and summary judgment is entered in favor of Defendant on Count V.

## II.     *Embezzlement*

Plaintiffs allege they also have a claim for non-dischargeability arising from Defendant's embezzlement of funds from the LLC while he was acting as a manager of the LLC.  "Bankruptcy courts define embezzlement as the 'fraudulent appropriation of property of another by a person to whom such property has been entrusted or to whose hands it has lawfully come.' " *In re Taylor*, 551 B.R. 506, 521 (Bankr. M.D. Ala. 2016) (citing *Matter of Weber*, 892 F.2d 534, 538 (7th Cir.1989) quoting *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 40 L.Ed. 422 (1895)); *see also Belfry v. Cardozo (In re Belfry)*, 862 F.2d 661, 662 (8th Cir.1988). The claim of embezzlement under 11 U.S.C. § 523(a)(4) differs from defalcation in that it does not require that the debt have been incurred in a fiduciary capacity. *Great Am. Ins. Co. v. Graziano (In re Graziano)*, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983).

To prove embezzlement, the plaintiff must show that "(1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent." *Indo–Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 40 (Bankr. E.D.N.Y. 2011). A partner or employee who diverts a corporation's funds for his or her own use commits embezzlement within the meaning of § 523(a)(4). *See Race Place of Danbury, Inc. v. Scheller (In re Scheller)*, 265 B.R. 39, 54 (Bankr. S.D.N.Y. 2001); *In re Graziano*, 35 B.R. at 595.

However, to prevail on a claim of embezzlement, a plaintiff is required to establish that the property embezzled was the plaintiff's property. "A key element of ... embezzlement is that the plaintiff must establish ownership of the property taken." *In re Cuenant*, 339 B.R. 262, 277 (Bankr. M.D.Fla. 2006). It is undisputed that the Plaintiffs loaned funds to the LLC.  The undisputed facts indicate the Plaintiffs did not entrust their property to the Debtor (with whom they had never

spoken), but rather they loaned money to the LLC at the behest of and based upon the representations of Kamhi. Although the Debtor admittedly transferred funds from the LLC to other personal and/or business accounts owned by him, Plaintiffs cannot prove that Defendant misappropriated *their* property because the transferred funds were property of the LLC. Any funds that were subsequently transferred by Defendant belonged to the LLC at the time of transfer. Thus, even assuming Defendant misappropriated funds, he did so from the LLC. And even if the misappropriated funds were derived from Plaintiffs' loan, the funds were not funds of the Plaintiffs; the funds were property of the LLC. Consequently, any claim of non-dischargeability based on embezzlement belongs to the LLC. *Herbert H. Post & Co. v. Sidney Bitterman Inc. (In re Herbert H. Post & Co.)*, 219 N.Y.S.2d 214 (1996) (citing *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985) for the general rule that a shareholder lacks standing to sue for an injury to the corporation even though he loses the value of his investment).[3]

In 2008, New York courts determined that members of a limited liability company may bring derivative suits on behalf of the limited liability company even though there are no provisions governing such suits in the Limited Liability Company Law. *Tzolis v. Wolff*, 10 N.Y.3d 100 (Ct. Appeals 2008). This adversary proceeding, however, is not a derivative suit on behalf of the LLC as plaintiff. This non-dischargeability action was commenced by the Goodsteins personally, not as members of the LLC on behalf of the LLC.

In *White v. Whittle (In re Whittle)*, 449 B.R. 427 (Bankr. M.D.Fla. 2011), members of a limited liability company brought an action against the debtor who had been the managing member.

---

[3] Although the *Herbert H. Post & Co.* court noted there is an exception to the general rule when the wrongdoer has breached a duty owed to the shareholder **independent of any duty owing to the corporation wronged**, in this case there are no allegations of any independent duty owed to Plaintiffs by the Debtor (who never met or spoke to Plaintiffs). 219 N.Y.S.2d at 225.

The debtor moved to dismiss arguing that the plaintiffs lacked standing to pursue derivative claims properly asserted only by the limited liability company. *Id.* The court concluded that the essential question was whether the plaintiffs were creditors. *In re Whittle*, 449 B.R. at 429 (citing *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Agreeing with the debtor, the court stated:

> Plaintiffs base their Section 523(a)(4) claim on allegations that Whittle's misuse of the LLC's monies amounts to fraud, embezzlement, or larceny. Taking these allegations as true, the Court absolutely could draw reasonable inferences that SGGUSA was damaged by Whittle's diversion of the LLC's funds. SGGUSA indeed may have a claim against Whittle. The alleged facts, however, do not support a conclusion that plaintiffs, as members of SGGUSA, are owed a debt by Whittle.

*Id*. at 430. The court added: "plaintiffs are not entitled to recover directly any damages that were inflicted on the LLC by Whittle's misuse of LLC property" because they failed to avail themselves of a Florida statute establishing the right of a member to bring a derivative action on behalf of a limited liability company. *Id*. (footnote omitted). *See also Lewis v. Spivey (In re Spivey)*, 440 B.R. 539, 545 (Bankr. W.D.Ark. 2010) (Arkansas limited liability company statute imposed fiduciary duties upon members to account to the company, but one member had no fiduciary duties to other members and members could not, in their own right, establish a claim for embezzlement). Plaintiffs, having pursued this embezzlement claim personally [and not derivatively through the LLC], cannot establish a claim for embezzlement so as to make their judgment against Debtor non-dischargeable under 11 U.S.C. §523(a)(4). Although the Court previously denied dismissal of the embezzlement claim, upon summary judgment motion, after a review of all undisputed facts and applicable law presented by both parties, summary judgment is appropriate. It is therefore

ORDERED AND ADJUDGED that Debtor Moshe Enbar's *Motion for Summary Judgment and Memorandum of Law* (ECF 144) is GRANTED on Counts V and VI of the Complaint, in favor of Defendant and against the Plaintiffs, and the debt owed to Plaintiffs by virtue of that certain New York default judgment is dischargeable in Debtor's bankruptcy case.

###

Copies furnished to:

Kevin Gleason, Esq.
Amanda Peterson, Esq.
Joshua Mallin, Esq.